**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

---

Wilbur-Ellis Company LLC,

                    Plaintiff,

     vs.

Cody Downing,

              Defendant.

Court File No.: 4:21-cv-332-RGE-HCA

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

   I.  PROCEDURAL HISTORY ON DISCOVERY DISPUTES ............................................. 2

   II.  DOWNING'S SEARCHES FOR RESPONSIVE DOCUMENTS ..................................... 4

ARGUMENT .............................................................................................................................. 5

   I.  LEGAL STANDARD ..................................................................................................... 5

   II.  SANCTIONS ARE APPROPRIATE FOR DOWNING'S WILLFUL VIOLATIONS. ....... 6

   III.  GENERAL DISCOVERY DEFICIENCIES ..................................................................... 8

      A.  Downing Refuses to State Whether He is Withholding Responsive Documents. .......... 8

      B.  Downing Has Failed to Provide a Privilege Log. ........................................................ 10

      C.  Downing Has Not Diligently Searched for Responsive Materials. .............................. 11

   IV.  SPECIFIC DISCOVERY DEFICIENCIES AND IMPROPER OBJECTIONS. ................ 13

      A.  Objections to Scope of Time .................................................................................... 13

      B.  Objections regarding Customers ................................................................................ 14

      C.  Revised Interrogatories Nos. 3-5, 9, and Requests Nos. 3-4, 9, 11-12, 14. .................. 15

      D.  Wilbur-Ellis Revised Interrogatory No. 2 and Request Nos. 1-2, 5, 13. ..................... 16

   V.  APPROPRIATE SANCTIONS ....................................................................................... 17

CONCLUSION .......................................................................................................................... 20

PROOF OF SERVICE ............................................................................................................... 21

## INTRODUCTION

This is a case in which Plaintiff Wilbur-Ellis Company LLC's ("Wilbur-Ellis") former employee, Defendant Cody Downing ("Downing"), misappropriated Wilbur-Ellis's trade secrets and confidential information and tortious interfered with its prospective business for the benefit of his new employer, J.R. Simplot Company ("Simplot"), a direct competitor. Downing has dodged discovery at every turn of this case. Downing has continuously refused to participate in discovery, unless it is conducted on the unreasonable terms and scope he unilaterally demands, all in violation of fundamental discovery rules, discovery standards, and even two Court Orders.

This case is six weeks away from trial and Downing has produced just 20 pages of documents[1], in a type of case for which the Eighth Circuit recognizes that "any hard evidence" of misappropriation "is within **the sole control** of [defendant]," and thus plaintiff "can prove [a defendant's] culpability **only through discovery**." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 956 (8th Cir. 2023) (emphasis added). Consistent with *Ahern Rentals*, Wilbur-Ellis has exhaustively tried to seek relevant material from Downing in discovery. On two occasions, the Court has entered Orders compelling Downing to supplement material in discovery—most recently in June 2024, in which the Court noted Downing had taken an "unsupportable position" and said it was "perplexed as to the legal basis" for his discovery tactics. (*See* Doc. 139 at 3, 5) (the "June 2024 Order"). Downing disregarded the June 2024 Order's terms when he incorporated prior objections and deposition testimony, did not conduct any new searches for responsive documents, and refused to state whether he is withholding responsive materials. In other words, Downing— once again—deliberately violated a Court Order and continued insisting that discovery will only be

---

[1] The parties' pretrial disclosures were due on July 12, 2024, and they have other pretrial deadlines imminently approaching on July 30, 2024. (*See* Docs. 24, 91,1 46); *see also* LR 16A. Thus, Downing has prevented Wilbur-Ellis from identifying potential exhibits in its pretrial disclosures, to the extent he has documents that he has failed to produce.

conducted in a manner he approves.

As outlined below, because of Downing's disregard for the Court's Orders, and the resulting prejudice to Wilbur-Ellis in discovery and, ultimately, its ability to have a fair opportunity to prosecute its claims against Downing, the Court should impose sanctions on Downing. Downing has had ample opportunity to comply with the Federal Rules of Civil Procedure and Court's Orders. Enough is enough. Based on Downing's desire to use a lack of discovery to his advantage in this case, including by filing a motion for summary judgment in which he primarily contends Wilbur-Ellis has "no evidence" to support its claims, the sanctions should be (1) staying proceedings until Downing complies with the Court's Orders; or (2) directing that certain facts set forth by Wilbur-Ellis be taken as established or prohibiting Downing from opposing Wilbur-Ellis's claims. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii), (iv).

## FACTUAL BACKGROUND

### I. PROCEDURAL HISTORY ON DISCOVERY DISPUTES

In June 2022, Wilbur-Ellis initially served its Interrogatories and Requests for Production on Downing. It is noteworthy Wilbur-Ellis did not serve a burdensome set of discovery requests; there are just 21 Interrogatories and 16 Requests for Production. On August 1, 2022, Downing served responses. (Doc. 65-5 (Downing's Objections and Responses to Interrogatories), 65-6 (Downing's Objections and Responses to Requests for Production)). In essence, these consisted entirely of objections, in which Downing ***failed to provide any substantive answers or produce even a single document***.[2]

---

[2] This is the origin for Downing's main objection used throughout the case, namely, "the unsupportable position that he need not respond to any of Wilbur-Ellis's discovery requests until he is satisfied with Wilbur-Elli's description of the alleged trade secrets." (Doc. 139 at 3).

After repeatedly attempting to meet-and-confer to resolve the discovery dispute, without success, in January 2023, Wilbur-Ellis filed its first Motion to Compel. (Doc. 65). On September 27, 2023, the Court granted Wilbur-Ellis's Motion to Compel, in part, ordering Downing to "provide fulsome supplemental responses." (Doc. 85 at 20) (the "September 2023 Order"). On October 27, 2023, Downing supplemented his responses. (*See* attached Exhibit A (the "October 2023 Interrogatory Responses"); attached Exhibit B (the "October 2023 RFP Responses")). Yet again, Downing's supplement was evasive, incomplete, and hardly complied with the Court's September 2023 Order. On January 12, 2024, Wilbur-Ellis continued trying to progress discovery and took Downing's deposition.[3] With Downing unwilling to cure his ongoing discovery deficiencies, on February 26, 2024,[4] Wilbur-Ellis filed its second Motion to Compel Discovery. (Doc. 121).

On June 11, 2024, the Court granted Wilbur-Ellis's second Motion to Compel, in part. (Doc. 139) (the "June 2024 Order"). On Interrogatories, while the Court determined Wilbur-Ellis had some broad discovery requests requiring narrowing, the Court was also "perplexed as to the legal basis used by Downing's to justify his re-writing" of Wilbur-Ellis's discovery requests. (*Id*.). The Court ordered Wilbur-Ellis to serve narrowed Interrogatories by June 17, 2024, and Downing to respond by June 24, 2024, with instructions that "any appropriate objection already raised but any non-objected to portion must be answered." (*Id*.). As for documents, the Court ruled that, "[i]n light

---

[3] In the intervening months, the Court resolved other matters, including denying Downing's Motion to Strike Wilbur-Ellis's First Amended Identification of Trade Secrets, (Docs. 86, 100). (*See* Doc. 116) (holding Wilbur-Ellis's trade secrets claim will be decided on the merits). This effectively overruled Downing's prior objections based on the alleged failure to identify trade secrets; however, Downing has continued incorporating and relying on this objection.

[4] Downing has suggested that Wilbur-Ellis's efforts to obtain basic discovery from him are stall tactics to delay a ruling on his motion for summary judgment. It is therefore noteworthy that Wilbur-Ellis filed its second Motion to Compel (Doc. 121) ***days before*** Downing filed his pending Motion for Summary Judgment (Doc. 122).

of Downing's deposition testimony, Downing must give serious consideration as to whether he has additional documents that are responsive to the June 2022 discovery requests." (*Id.*). With this concern, the Court ordered Downing to "re-evaluate whether he has any ***non-privileged responsive documents*** not already produced," and if so, "produce those documents." (*Id.* at 5-6) (emphasis added). If he did not have more documents, Downing "shall notify Wilbur-Ellis in writing that he has produced ***all responsive documents*** in his possession or has withheld documents based on privilege (which should be documented in a privilege log)." (*Id.* at 5) (emphasis added). Lastly, "[t]he Court caution[ed] Downing that a failure to produce responsive documents may result in sanctions." (*Id.* at 6).

On June 17, 2024, Wilbur-Ellis served 12 Revised Interrogatories, and on June 24, 2024, Downing served his "Objections and Responses to Plaintiff's Revised Written Discovery," nearly 50 pages of objections to just 12 Revised Interrogatories. (*See* attached Exhibit C (the "June 2024 Responses")). Many of Downing's objections to the Revised Interrogatory are improper, and his factual responses are primarily limited to citing his deposition testimony. (*See, e.g., id.* at 15). Downing did not provide any further clarity into whether he is withholding responsive documents; rather, he maintained his prior objections, asserted voluminous new objections, and stated he was "***not relying*** on any document or evidence not otherwise disclosed or produced in discovery." (*Id.* at 1-2) (emphasis added). As to the woeful document production for which the Court instructed him to "give serious consideration" to its adequacy, Downing merely reincorporated his prior objections, "searches preformed, and their results. (*Id.*).

## II.    DOWNING'S SEARCHES FOR RESPONSIVE DOCUMENTS.

After the September 2023 Order, Downing produced a total of 20 pages of documents (of which several pages are duplicates or have irrelevant coding or scripting text). (*See* Doc. 121-6

(showing Downing's entire document production to date)). To find these documents, Downing said he engaged in "the following reasonable searches:"

- Any text messages between Downing and Tom Stanton prior to August 27, 2021: None
- Any email originating from a Wilbur-Ellis domain (@wilburellis.com) to Downing at his @hotmail email address (codyd24@hotmail.com) prior to August 27, 2021: 1 email from Tim Nester, see Downing 001-Downing 003
- Any email between a Simplot domain (@simplot.com) and Downing's @hotmail email address (codyd24@hotmail.com) prior to August 27, 2021: A few emails, see Downing 004-Downing 020

(Exhibit B at 4) (cropped). Those are the only searches listed in Downing's responses, and he incorporated them in response to 8 of the other 16 requests. (*Id*. at 5-7, 9-11 (Requests Nos. 2-5, 11, 13-15). Either way, it does not appear Downing engaged in any further searches in response to the June 2024 Order, (*see* Exhibit C at 1-2 (incorporating prior objections and "searches performed")), despite the Court's implicit overruling of his prior searches and order to "give serious consideration as to whether he has additional documents that are responsive." (Doc. 139).

## ARGUMENT

### I.    LEGAL STANDARD

Rule 26 broadly sets forth the discovery scope, consisting of "any nonprivileged matter relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." *Penford Corp. v. Nat'l Union Fire Ins. Co*., 265 F.R.D. 430, 434–35 (N.D. Iowa 2009). After a threshold showing of relevance is made, a party must produce requested information and documents that "reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "[T]he party resisting production of the requested information bears the burden of establishing lack of relevancy." *Marook v. State Farm Mut. Auto. Ins. Co*., 259 F.R.D. 388, 394 (N.D. Iowa 2009).

Under Rule 37, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . , the court . . . may issue further just orders," including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Also, "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Federal courts have "a large measure of discretion in deciding what sanctions are appropriate for misconduct." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1250, 1260 (8th Cir. 1997). The Court need not "impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanctions under the circumstances. *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000).

## II.    SANCTIONS ARE APPROPRIATE FOR DOWNING'S WILLFUL VIOLATIONS.

The imposition of discovery sanctions requires an order compelling discovery, a willful violation of that order, and prejudice to the other party." *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 934 (8th Cir. 2004) (internal quotations omitted). All three circumstances are met here.

First, there have been two Orders compelling Downing to provide certain supplemental discovery answers and documents. (Docs. 85, 139). The September 2023 Order required Downing "provide fulsome supplemental responses." (Doc. 85 at 20). While further rejecting Downing's

unsupported and perplexing discovery stances, the June 2024 Order instructed Downing to: (1) "serve supplemental discovery responses that address the narrowed interrogatories; and (2) "give serious consideration as to whether he has additional documents that are responsive to [Wilbur-Ellis's] June 2022 discovery requests," and if so, produce them, or if not, "notify Wilbur-Ellis in writing that he has produced all responsive documents in his possession or has withheld documents based on privilege (which should be documented in a privilege log)." (Doc. 139 at 5-6).

Second, Downing willfully violated the Orders. To date, Downing has produced a pitiful 20 pages of documents. Even after being instructed to "give serious consideration" to the adequacy of his document production—based on **his own** deposition testimony—Downing chose to stand his ground and produce nothing else. What's worse, Downing violated the basic order to state whether he has any responsive documents in his possession. (Doc. 139 at 5). As discussed in more detail below, Downing's persistent failure to cure his discovery deficiencies and disregard of the Court's Orders is a willful violation. *See, e.g., Dugger v. Stringfellow*, Case No. 4:11-cv-04019-BAB, 2011 U.S. Dist. LEXIS 134149, at *4-5 (W.D. Ark. Oct. 18, 2011) (finding plaintiff's actions willful where he had knowledge of discovery requests and filings in the case and adequate opportunity to respond, but failed to do so; "A finding of bad faith is not required, but rather the court must determine if the plaintiff acted intentionally, as opposed to accidentally or involuntarily.").

Third, the prejudice to Wilbur-Ellis is clear. Wilbur-Ellis has tried to obtain discovery from Downing for years. Trial is weeks away and Wilbur-Ellis remains forced to seek the Court's assistance in obtaining basic discovery from Downing. Discovery is incomplete on critical topics, like Downing's communications shortly before and after he left Wilbur-Ellis, which are relevant to establishing misappropriation or improper intent for tortious interference. *See Ahern Rentals*, 59 F.4th at 956 (discussing how in such cases a plaintiff "can prove [a defendant's] culpability only

through discovery"). Additionally, Downing filed a Motion for Summary Judgment, in which he argues Wilbur-Ellis has not produced any evidence or documents to support its claims – while at the same time refusing to produce the very evidence that Wilbur-Ellis needs to respond. Downing's wholesale refusal to engage in good faith discovery is clearly intended to stonewall Wilbur-Ellis's efforts to prosecute its claims. Equally concerning, Downing seeks to benefit from his improper conduct by seeking summary judgment based on his theory that Wilbur-Ellis lacks the very evidence he refuses to provide in discovery. The prejudice endured by Wilbur-Ellis is substantial.

## III.     GENERAL DISCOVERY DEFICIENCIES.

### A.     Downing Refuses to State Whether He is Withholding Responsive Documents.

Downing has not complied with the June 2024 Order's mandate to state whether "he has produced **_all responsive documents_** in his possession or has withheld documents based on privilege (which should be documented in a privilege log)." (*See* Doc. 139 at 5) (emphasis added). In addition, Rule 34 obligates a party objecting to a request for production to "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Thus, this is a basic and fundamental requirement for any case. Downing, however, violated the June 2024 Order (and, throughout the case, Rule 34(b)(2)(C)) by evasively stating was "**_not relying_** on any [unproduced] document or evidence." (*See* Exhibit C at 2) (emphasis added).

The Court did not order Downing to produce documents he will rely on at trial. The Court ordered Downing to produce responsive documents, state if he is withholding responsive documents, or tell Wilbur-Ellis he has nothing else to produce. (Doc. 139 at 5). He unequivocally **_did not_** do this. There is a difference between one "relying on" documents and possessing "responsive" documents. In the last telephone conference, (*see* Doc. 155), Downing's counsel conceded as much. Yet, at no point has Downing transparently said whether he is withholding responsive materials. The closest Downing gets is when he indicates he **_might_** have items, but, even

then, he evasively states that "[t]hose items, again, *if any*, are in undersigned counsel's possession." (Exhibit B at 5) (emphasis added). In the recent conference, Downing's counsel admitted to withholding at least some documents that are responsive to Wilbur-Ellis's requests. Therefore, Downing blatantly disregarded the June 2024 Order by merely stating he is "not relying" on any other documents.

Moreover, the time for Downing to disclose or produce responsive materials is not six weeks before trial. For the former, even if Downing discloses that he is withholding responsive documents now, Wilbur-Ellis does not have time to assess the basis for any objection and, if necessary, move to compel the production. For the latter, allowing Downing to supplement his production weeks before trial, after discovery closed, will prejudice Wilbur-Ellis's ability to present its claims and prepare for trial. Wilbur-Ellis has tried to procure this information from Downing throughout this case. Beginning in late 2022 and early 2023, Wilbur-Ellis had to overcome Downing's "labels and categories" objections, overruled in September 2023. (Doc. 85). Next, Wilbur-Ellis had to push past Downing's perplexing efforts to re-write the discovery requests and his "unsupportable position that he need not respond to . . . discovery requests until he is satisfied with Wilbur-Ellis's description of its alleged trade secrets." (Doc. 116 at 3 (denying Downing's motion to strike in February 2024); Doc. 139 at 3, 5 (finding Downing's ongoing discovery positions "unsupportable" and "perplex[ing]")). After all this, even after the Court's explicit warning in the June 2024 Order, Downing chose to evasively saying he is "not relying" on unproduced documents and continued to withhold responsive material, in clear violation of the June 2024 Order—and despite the Court's warning that "failure to produce responsive documents may result in sanctions." (Doc. 139 at 6). Thus, the Court should sanction Downing by either (1) staying further proceedings until the [June

2024 Order] is obeyed; or (2) directing that certain facts be taken as established or prohibiting Downing from opposing Wilbur-Ellis's claims. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii), (iv).

### B.  Downing Has Failed to Provide a Privilege Log.

Throughout discovery, Downing has broadly and generally objected based on privilege. (Exhibit B at 1 (stating he "has taken reasonable efforts to prevent the release of [privileged] information")). He also specifically objected on the basis of privilege to 12 of 16 Requests for Production, (*id*. at 3-11 (Requests Nos. 1, 3-7, 9-12, 15-16); all 21 of Wilbur-Ellis's original Interrogatories, (*see generally* Exhibit A); and all 12 of the Revised Interrogatories, (*see generally* Exhibit C). In other words, Downing has objected to over 90% of Wilbur-Ellis's discovery requests based on privilege. Yet, he has never produced a privilege log nor otherwise stated whether he is withholding documents based on this objection.

Rule 26(b)(5) requires any party "withholding information otherwise discoverable by claiming that the information is privileged" must "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(5)(A)(ii). Importantly, the party must "do so in a manner that . . . will enable the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Even though Rule 26's obligation is clear, Wilbur-Ellis served an Interrogatory in which it requested a privilege log:

> **Interrogatory No. 21:** If any requested Documents or ESI has been or will be withheld, or if you have objected to or will object to any outstanding discovery requests on the basis of the attorney-client or any other privilege, identify all Documents and ESI being withheld by date, author, addressee(s), recipient, type of Document or ESI, general subject matter, and basis for withholding.

> **Response to Interrogatory No. 21:** Downing objects on the basis of subject matter, subparts, and calls for privilege/protection. Downing further objects on the basis that this Interrogatory imposes an unduly burdensome obligation beyond what is required by the Federal Rules of Civil Procedure and the Civil Local Rules. Additionally, see the objections and responses to all preceding Interrogatories requesting Documents or ESI.

(*See* Exhibit A at 21). Downing, oddly, objected based on privilege to the discovery request seeking a privilege log for withheld documents or information. *Id*. Not only is the privilege objection meritless, so are the objections based undue burden or exceeding the Federal Rules. Wilbur-Ellis merely asked for information (*e.g.,* date, author, and general subject matter) to "enable [it] to assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). Downing's misuse of privilege objections did not stop there. The Court's June 2024 Order ordered Downing that if he "has withheld documents based on privilege," he must share that with Wilbur-Ellis and it "should be documented in a privilege log." (Doc. 139 at 5).

In this case, Downing has objected on the basis of privilege, both generally to all requests and specifically to 90% of Wilbur-Ellis's requests. The general objection that he has taken steps "to prevent the release" of privileged information creates a blanket of uncertainty for all discovery requests as to whether Downing is withholding materials for this basis. As also explained above, Downing has not stated whether he is withholding documents or information responsive to any of Wilbur-Ellis's specific discovery requests—much less whether he is doing so because of a privilege. Based on Downing's general and specific objections to privilege to essentially all discovery requests, it certainly seems likely he is withholding ***something***. Trial is scheduled to begin within weeks, and Wilbur-Ellis ***still*** has no idea what Downing may be withholding nor, to the extent any withholding is based on privilege (for 90% of the discovery requests to which he objected), a way to meaningfully assess the objection. This is all in violation of Rule 26(b)(5)'s plain language, Wilbur-Ellis's Interrogatory No. 21, and the Court's June 2024 Order.

### C.    Downing Has Not Diligently Searched for Responsive Materials.

Again, the Court's June 2024 Order expressed concern with Downing's production based on "his deposition testimony" and ordered him to seriously consider whether he had additional responsive documents. (Doc. 139 at 5). Downing merely reincorporated his prior searches and

results. (Exhibit C at 1-2). This included is reliance on the objection about Wilbur-Ellis's alleged failure to identify its trade secrets, although overruled. (*See* Docs. 116 at 3, 139 at 3). This failed to comply with the Court's Order. Moreover, as explained below, Downing's continued reliance on earlier, improper objections strongly suggest he has not adequately looked for responsive materials.

For example, in his deposition, Downing testified that he "turned all those [hard documents] over" to his counsel. (Doc. 122-3 at 76:20-77:14, App. 118; *see also id.* at 134:8-10, App. 133 (stating he "put everything . . . in a box and sent it to my attorney")). Although he could not recall what documents he had, Downing said it would have likely included seed guides and marketing materials, (*id.*), and possibly printed invoices. (*Id.* at 132:5-134:10, App. 132-33). Based on this testimony and Downing's counsel's admission to possessing responsive documents during the July 11 conference, it appears there has been either, at best, an inexcusable failure to look through the physical documents Downing provided, or, at worst, intentional withholding of responsive materials (without informing Wilbur-Ellis as much, in violation of the June 2024 Order).

Another example involves Downing's inadequate searches for key communications. In his deposition, Downing answered, "I have not," when asked whether he has looked for emails he had with Tom Stanton from Simplot, even though Stanton possibly emailed him. (*Id.* at 83:17-84:15, App. 120). On this point, while Downing searched his "Hotmail" email, he, for the first time in his deposition, revealed having a Gmail email during his employment with Wilbur-Ellis. (*Id.* at 84:19-85:17, App. 120). Even though Downing tried to minimize his use of the Gmail account, it does not appear he has ever searched this account.[5] Likewise, forensic investigation revealed an iCloud email

---

[5] Downing may argue this is the first time he has been asked about his Gmail account. This is true because Downing refused to answer Wilbur-Ellis's basic request to identify his "personal e-mail addresses," (Exhibit A at 19-20), and thus it did not even know about this account *until* Downing's deposition. Had Downing revealed this email earlier, Wilbur-Ellis could have inquired about it.

account associated with Downing. It does not appear Downing has ever looked for responsive materials in his iCloud account, either. (Exhibit B at 4, 6-7 (Request Nos. 3-5)).

Similarly, Downing's unilateral limitation to searching his text messages for only conversations with Tom Stanton is entirely improper. (*Id.*). Downing testified about his text to Chad Mueller (a former supervisor who "coincidentally" resigned form Wilbur-Ellis on the same day as Downing to join Simplot) the day after he resigned, about how Wilbur-Ellis had "cut [his] e-mail off already" and "Fuck them now, let's make it hurt." (*Id.*at 94:24-96:22, App. 123). Downing also testified he was "sure" he talked with Josh Gompert and Mueller "before he resigned" about going to Simplot. (*Id.* at 88:3-21, App. 121; *see also id.* at 90:2-11, App. 122 (stating "I think I told them I was strongly considering it and probably going to [go to Simplot]"). Further, Downing was "sure" he discussed converting dealers to Simplot with Gompert and Mueller. (*Id.* at 105:9-19, App. 125). Downing could not recall specifics of these conversations three years later with any certainty; however, the one certainty is that Downing, despite his testimony and June 2024 Order's instructions, has failed to ***ever*** look for responsive communications with these individuals (and others). (*See, e.g.,* Exhibit B at 4 (listing his limited searches for communications)).

## IV.    SPECIFIC DISCOVERY DEFICIENCIES AND IMPROPER OBJECTIONS.[6]

### A.    Objections to Scope of Time.

Downing objected to multiple Revised Interrogatories to the extent they seek information or documents goes beyond August 27, 2021 because Wilbur-Ellis allegedly has no claims based on Downing's conduct after that date. (*See, e.g.,* Exhibit C at 7). Not only is this blatantly wrong, but it is yet another example of Downing's strategy to unilaterally determine what ***he thinks*** are

---

[6] Wilbur-Ellis attempts to address Downing's most egregious objections. Based on page limits, *see* LR 7(h), there are only so many objections Wilbur-Ellis can address from Downing's ***50-pages*** of objections. (Exhibit C). Wilbur-Ellis respectfully reserves the right to challenge the merits of any other objections at the already-scheduled hearing on this motion. (*See* Doc. 156).

the proper bounds of discovery (*Id*.). Wilbur-Ellis has alleged Downing misappropriated its trade secrets when he joined Simplot ***after August 27, 2021***. (*See* Doc. 1 at ¶¶ 34-35). Wilbur-Ellis's forensic expert uncovered evidence of Downing accessing Wilbur-Ellis files on his USB device ***after he had resigned and started at Simplot*** in September and October 2021. (*See* Exhibit D, attached hereto at ¶ 23 ("Karchmer's Expert Report")). Downing discussed his intent to convert dealers from Wilbur-Ellis to Simplot with others "[a]fter [he] started at Simplot," which relates to Wilbur-Ellis's claims. (*See* Doc. 122-3 at 104:8-105:19). The Court should overrule this objection each time it is made. Further, as to Downing's nonsensical claim "there is no discernable way to investigate or respond to any written discovery seeking information following that date," (*see* Exhibit C at 7), he could start by looking for documents or communications after August 27, 2021. Based on this objections and his prior searches, it is readily apparent Downing has not conducted any searches for responsive documents or communications occurring after August 27, 2021.

### B.    Objections regarding Customers.

Downing objected based on his claim that discovery is not appropriate as it concerns any of Wilbur-Ellis's current customers. (*Id*.). Tortious interference with existing and prospective business claims are essentially the same, but the latter requires proof of intent to injure. *Burke v. Hawkeye Nat. Life Ins. Co.*, 474 N.W.2d 110, 114 (Iowa 1991). Just because one may have been an existing customer does not preclude a recovery based on future lost business with that same customer. *Id*. (holding a former employee interfered with the existing policies and reduced plaintiff's "chances of writing new business for these customers in the future"). Downing testified he is not aware of any customer or dealer with whom he worked at Wilbur-Ellis that is still doing business with Wilbur-Ellis, demonstrating his interference with the prospective business relationships Wilbur-Ellis had with these customers in the future. (Doc. 122-3 at 169:18-170:3).

Wilbur-Ellis must be allowed to conduct certain discovery regarding or demonstrating Downing's improper intent. Thus, Downing's objection lacks legal merit and should be overruled.

### C.    Revised Interrogatories Nos. 3-5, 9, and Requests Nos. 3-4, 9, 11-12, 14.

Notably missing from Downing's supplemental answers and documents are communications during the end of his employment and shortly after beginning his employment with Simplot.  For example, Wilbur-Ellis revised Interrogatory No. 3, limiting the time period from 3 years to 1 year and narrowed the subject matter. (*See* Exhibit A at 5, C at 10). Downing improperly objected (most addressed above) and cited a few pages of his deposition that does not fully address all the topics in Revised Interrogatory No. 3. (Exhibit C at 15). For example, Downing testified he is "sure" he discussed converting dealers after joining Simplot with Gompert and Mueller (Doc. 122-3 at 105:1-19), but he did not identify these conversations. Nor has Downing looked for written communications he had with these individuals about these conversations. (*See* Exhibit B at 2; Exhibit C at 2, 15). Such evidence might also appear in his telephone records, but he has not looked or produced those, either. (*See* Exhibit B at 4, 9-10).

Wilbur-Ellis also narrowed Revised Interrogatories Nos. 4-5, asking for communications for just a two-month period about Downing' employment with Simplot and its products or services. (*See* Exhibit C at 15, 18). Downing limited his response to Simplot employees with whom he communicated during his recruitment. (*Id*.). In his deposition, Downing testified that "[a]fter [he] started at Simplot, [he] told them [he] was working" at Simplot and "[e]ither stopped by their business or called them." (Doc. 122-3 at 46:17-47:2). He has not identified these conversations with customers and dealers. Who did he visit or call? When? What did he say? Likewise, Wilbur-Ellis served Revised Interrogatory No. 9, reducing the scope of time from 3 years to 1 year and seeking only communications with Wilbur-Ellis customers and business partners with whom he worked during his last 2 years at Wilbur-Ellis. (Exhibit C at 33-34). Downing only served objections, many

of which are improper as stated above. (*Id*. at 34-38). Further, Downing has largely failed to search for documents responsive to these Revised Interrogatories and corresponding Requests for Production to allow Wilbur-Ellis to inquire into this topic. (*See* Exhibit B at 4 (his searches); *id*. at 5-6, 8-11 (corresponding Requests Nos. 3-4, 9, 11-12, 14)).

All of these requests seek evidence relevant to Downing's intention (and success thereof) to tortious interfere with Wilbur-Ellis's prospective business opportunities and misappropriate its trade secrets. *See, e.g., Ahern Rentals*, 59 F.4th at 956. As recognized in *Ahern Rentals*, Wilbur-Ellis must be allowed to conduct discovery into Downing's culpability by seeking evidence within his sole possession. *Id*.; *see also Burke* 474 N.W.2d at 114 (explaining one must prove intent for tortious interference with prospective business relations). In fact, Downing concedes this by, curiously, objecting because Wilbur-Ellis is seeking "the existence of [evidence] of an element of its claim." (Exhibit C at 37). That is precisely the point. Downing is in sole possession of these communications and other responsive information, and, therefore, Wilbur-Ellis must use discovery to explore the extent of his conduct and culpability. *Ahern Rentals*, 59 F.4th 956.

### D.    Wilbur-Ellis Revised Interrogatory No. 2 and Request Nos. 1-2, 5, 13.

Downing must produce discovery related to documents and information Downing still possesses from Wilbur-Ellis and any Wilbur-Ellis information he improperly shared with Simplot, which is relevant to Wilbur-Ellis's claims of misappropriation of trade secrets and tortious inference. (Exhibit C at 6; Exhibit B at 3-5, 6-7, 10 (Request Nos. 1-2, 5, 13).

For example, Downing did not provide a factual response to Revised Interrogatory No. 2 but relied on voluminous, improper objections. This asked for documents Downing has related to Wilbur-Ellis, items identified in Wilbur-Ellis's First Amended Identification of Trade Secrets (Doc. 86, the "FAITS"). Thus, it directly relates to Wilbur-Ellis's misappropriation claim. On one hand, Downing, strangely, objected as it concerned documents not listed in the FAITS, and, on the other

hand, objected because the scope about the FAITS allegedly does not involve "the specific misappropriation of trade secrets . . . that remain in this litigation." (*Compare* Exhibit C at 6 *with id*. at 8). Downing continues to take the "unsupportable position" that no discovery can occur until he is satisfied with Wilbur-Ellis's trade secret definition, despite the Court denying his motion to strike and overruling this type of objection. (Docs. 116, 139). Downing's scope of time objection is incorrectly, as explained above. (*See also, e.g.,* Exhibit D at ¶ 23 (detailing Downing's use of Wilbur-Ellis files in September and October 2021)). His objection based on the suspicion Wilbur-Ellis may already possess materials is without merit. *See St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000). His "narrative response," "multiple subparts," "index of documents," and "duplicative discovery" objections are boilerplate and are facially deficient. Downing's ongoing reliance on his prior objections and searches for documents as it concerns the corresponding document requests is wholly improper, as explained above.

In short, these discovery requests go to the heart of Wilbur-Ellis's claim that Downing misappropriated and misused Wilbur-Ellis's confidential information and trade secrets, including to tortiously interfere with its prospective business relationships. Eighth Circuit law clearly permits Wilbur-Ellis to engage in this type of discovery. *See, e.g., Ahern Rentals*, 59 F.4th at 956. And, more importantly, the Eighth Circuit recognizes that a plaintiff bringing a claim for misappropriation, like Wilbur-Ellis, often "can prove [a defendant's] culpability **only** through discovery." *Id*. (emphasis added). Accordingly, the Court should overrule Downing's objections to the Revised Interrogatories and impose sanctions for the totality of his conduct in discovery in which he has prevented inquiries into undeniably discoverable matters.

## V.    APPROPRIATE SANCTIONS.

As explained above, Downing has been content to abstain from providing fulsome discovery answers and documents in this case because it has forced Wilbur-Ellis into the challenging position

of adequately developing its claims. *See, e.g., Ahern Rentals*, 59 F.4th at 956 (discussing how in such cases a plaintiff "can prove [a defendant's] culpability only through discovery"). In other words, the same evidence Downing has obstructed Wilbur-Ellis from receiving in discovery is the very evidence he now argues on summary judgment that Wilbur-Ellis lacks to support of its claims. (*See, e.g.,* Doc. 122-2 at 16-18 (arguing repeatedly Wilbur-Ellis has "no evidence")). As a result, the Court should impose the sanction of "staying further proceedings until" Downing complies with the Court's Orders. Fed. R. Civ. P. 37(b)(2)(A)(iv). Wilbur-Ellis recognizes this would be the third order compelling Downing to provide discovery materials. At some point, the efforts become futile. Therefore, Wilbur-Ellis respectfully asks that the Court warn Downing a failure to comply with any such order will result in a more severe sanction, such as striking his answer or rendering a default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii), (v); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-22 (8th Cir. 1999) (affirming a decision to strike defendants' answer based on their "blatant disregard of the Court's orders and the discovery rules, engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath . . . to prevent their opponent from fairly presenting its case").

In addition, or alternatively, to a stay of proceedings, the Court should fashion sanctions appropriate to fit Downing's non-compliance with the Order, and Wilbur-Ellis offers a suggestion. Two of Downing's most significant areas of non-compliance involve his failure to diligently search for and produce communications he had with others who left Wilbur-Ellis to join Simplot and Wilbur-Ellis's customers, and failure to identify what Wilbur-Ellis documents he still possesses. To prove misappropriation, Wilbur-Ellis must show acquisition, disclosure, or use of its trade secrets. *See, e.g.,* Iowa Code § 550.2(3). To prove tortious interference with a prospective business relationship, Wilbur-Ellis must establish Downing had intent to injure Wilbur-Ellis. *See Burke*, 474

N.W.2d at 114. A common way a plaintiff can show misappropriation is through showing emails, texts, or other forms of communication in which a defendant sends to himself,  discusses misappropriating with others, or actually shares with others the trade secret and confidential information. Similarly, Downing's intent for a tortious interference claim could be readily gleaned from reviewing his communications with customers. Wilbur-Ellis sought this type of information in written discovery.

On this point, courts have recognized the relief Wilbur-Ellis seeks is less severe because they do not involve the same due process concerns. *See Card Technology Corp. v. Datacard Inc.*, 249 F.R.D 567, 571 (D. Minn. 2008) (ruling that a "judicial admission of certain facts" as a sanction "is not necessarily a severe sanction" because "[t]he presumption of certain facts does not offend the right to due process and can be narrowly tailored to information not provided in discovery"). For example, in *English v. 21st Phoenix Corp.*, the court affirmed a sanction judicially admitting a fact against appellants after they impeded discovery by serving inadequate responses and repeatedly failed to produce documents as ordered by the district court. 590 F.2d 723, 727-29 (8th Cir. 1979).

By failing to look for and produce these types of responsive materials, Downing has prohibited Wilbur-Ellis from conducting discovery into highly valuable sources of information and documentation. Therefore, the Court should impose a sanction that directly addressing Downing's failure to search for and provide this type of information in discovery, such as either ordering facts establish as true or prohibiting Downing from opposing Wilbur-Ellis's (1) misappropriation claim on the use or disclosure element, and (2) tortious interference claim as it concerns Downing's intent. *See* Fed. R. Civ. P. 37(b)(2)(A) (ii), (iv). *See also English*, 590 F.2d at 728-29; 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.60 ("The purpose of this sanction is to provide parties with an incentive to timely disclose all material evidence in support of their positions that they intend to

use at any point during the course of the litigation, thus attacking the temptation some parties might feel to try to gain a tactical advantage at trial by exposing for the first time at that stage evidence that is favorable to their position."). As another alternative, the Court should exercise its broad to issue a "just order" of compelling Downing to produce electronic devices in his possession, along with access to his Gmail and Hotmail email accounts, for imaging by Wilbur-Ellis's forensic expert. Fed. R. Civ. P. 2(b)(2)(A). Such a just remedy is appropriate given Downing's repeated failure to diligently search for and produce responsive materials. Unfortunately, but candidly, Wilbur-Ellis has doubts about whether Downing will comply with any discovery Order, based on his non-compliance with two earlier Orders. Rather having to continue to rely on Downing's reframing of requests, unilateral impositions about the scope of discovery, or evasive statements about what responsive documents exist, Wilbur-Ellis should be allowed to conduct an independent review of the sources in which this responsive data is most likely stored through its expert witness to ensure all responsive materials are produced in this case. Fed. R. Civ. P. 2(b)(2)(A).

## <u>CONCLUSION</u>

As explained above, Downing has not only disregarded his duties in discovery under the rules, but also two Court Orders. Despite having many chances to satisfy his discovery obligations, Downing has failed (and continues to fail) to do so. For these reasons, based on Downing's willful and intentional conduct, and resulting prejudice to Wilbur-Ellis's ability to investigate and present its case, the Court should impose sanctions on Downing, and award Wilbur-Ellis its attorneys' fees and costs. *See* Fed. R. Civ. P. 37(b)(2)(A), (C).

Dated: July 17, 2024

/s/ Kyle D. Kennedy
Susan K. Fitzke, IA Bar No. AT0012102
sfitzke@littler.com
Jeremy D. Sosna, MN Bar No. 290233
jsosna@littler.com
*Pro hac vice*
Grant D. Goerke, Bar No. 0395226
ggoerke@littler.com
*Pro hac vice*
Lauren E. Clements, Bar No. 0399187
lclements@littler.com
*Pro hac vice*

LITTLER MENDELSON P.C.
1300 IDS Center 80 South 8th Street Minneapolis,
MN 55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Kyle D. Kennedy, AR Bar No. 2017104
*Pro hac vice*
LITTLER MENDELSON, P.C.
217 E. Dickson Street, Suite 204
Fayetteville, AR 72701
Telephone:    479.582.6141

***Attorneys for Plaintiff***
***Wilbur-Ellis Company LLC***

| PROOF OF SERVICE |
|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 17, 2024 by: |
| ☐ Hand Delivered        ☐ United States mail<br>☐ Federal Express         ☒ Other (CM/ECF) |
| Signature: */s/  Kyle D. Kennedy*<br>Kyle D. Kennedy |